# Ex. 2, Plaintiffs' Court of Claims Motion for Preliminary Injunction

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

VIRIDIS LABORATORIES, LLC,
a Michigan limited liability company, and
VIRIDIS NORTH, LLC,
a Michigan limited liability company,

   Plaintiffs,

v.

MICHIGAN MARIJUANA REGULATORY
AGENCY, a Michigan state agency,
ANDREW BRISBO, Individually, JULIE
KLUYTMAN, Individually, DESMOND
MITCHELL, Individually, CLAIRE
PATTERSON, Individually.

   Defendants.

Case No. 21-000219-MB

HON. CHRISTOPHER M. MURRAY

David R. Russell (P68568)
Brandon M. H. Schumacher (P82930)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Counsel for Plaintiffs
313 S. Washington Square
Lansing, MI 48933
(517) 371-8150
drussell@fosterswift.com
bschumacher@fosterswift.com

Kevin M. Blair (P76927)
HONIGMAN, LLP
Co-Counsel for Plaintiffs
222 N. Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0716
kblair@honigman.com

**<ins>11/23/2021 PLAINTIFFS VIRIDIS LABORATORIES, LLC'S AND VIRIDIS NORTH, LLC'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</ins>**

**ORAL ARGUMENT REQUESTED**

Plaintiffs Viridis Laboratories, LLC and Viridis North, LLC ("Plaintiffs") move on an emergency basis for entry of a temporary restraining order and, following a show cause hearing, a preliminary injunction enjoining Defendants from enforcing the November 17, 2021 recall

Document received by the MI Court of Claims.

bulletin.  Alternatively, Plaintiffs respectfully request that the Court, at a minimum, temporarily enjoin defendants from enforcing the recall as to: (1) products tested by Viridis Bay City; and (2) products that were tested for items other than aspergillus or other microbial.  Plaintiffs further request that the Court immediately allow Viridis Lansing and Viridis Bay City to resume testing for microbials.  As support of its Motion, Plaintiffs rely on their Verified Complaint and Brief in Support, which are specifically incorporated into this Motion.

Pursuant to Local Rule 2.119(A)(2), Plaintiffs Viridis Laboratories, LLC and Viridis North, LLC requested Defendants' concurrence in the relief sought on November 23, 2021, and further states that Defendants have denied or not acquiesced in the relief sought.  Therefore, it is necessary to present this Motion to the Court.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Grant their Motion in its entirety;

B.      Enter the proposed Order attached as **Exhibit 1**;

C.      Order such other relief as may be appropriate.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Counsel for Plaintiffs

Dated: November 23, 2021          By:      s/ David R. Russell
                                                    David R. Russell (P68568)
                                                    Brandon M. H. Schumacher (P82930)

HONIGMAN, LLP
Co-Counsel for Plaintiffs

By:      s/ Kevin M. Blair w/permission
           Kevin M. Blair (P76927)

36273:00001:5956271-1

2

Document received by the MI Court of Claims.

# EXHIBIT 1

Document received by the MI Court of Claims.

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

VIRIDIS LABORATORIES, LLC,
a Michigan limited liability company, and
VIRIDIS NORTH, LLC,
a Michigan limited liability company,

      Plaintiffs,

v.

MICHIGAN MARIJUANA REGULATORY
AGENCY, a Michigan state agency,
ANDREW BRISBO, Individually, JULIE
KLUYTMAN, Individually, DESMOND
MITCHELL, Individually, CLAIRE
PATTERSON, Individually.

      Defendants.

Case No. 21-000219-MB

HON. CHRISTOPHER M. MURRAY

---

David R. Russell (P68568)
Brandon M. H. Schumacher (P82930)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Counsel for Plaintiffs
313 S. Washington Square
Lansing, MI 48933
(517) 371-8150
drussell@fosterswift.com
bschumacher@fosterswift.com

Kevin M. Blair (P76927)
HONIGMAN, LLP
Co-Counsel for Plaintiffs
222 N. Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0716
kblair@honigman.com

---

**[PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR
TEMPORARY RESTRAINING ORDER**

*Document received by the MI Court of Claims.*

Having considered Plaintiffs Viridis Laboratories, LLC's and Viridis North, LLC's Verified Complaint, *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction, and Brief in Support, and because it clearly appears from specific facts that immediate and irreparable injury, loss or damage will result to Plaintiffs, including but not limited to significant financial losses and harm to customer goodwill without such injunctive relief;

**IT IS ORDERED:**

1. Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order is granted;

2. Defendants are enjoined from enforcing the November 17, 2021 recall bulletin;

3. Plaintiffs are permitted to immediately resume testing for microbials while this Temporary Restraining Order is in place; and

4. A Hearing shall be set on Plaintiffs' Motion for Preliminary Injunction at the earliest possible time.

Dated: _____, 2021

_____
Hon. Christopher M. Murray

36273:00001:5956360-1

1

41704012.3

Document received by the MI Court of Claims.

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

VIRIDIS LABORATORIES, LLC,
a Michigan limited liability company, and
VIRIDIS NORTH, LLC,
a Michigan limited liability company,

        Plaintiffs,

v.

MICHIGAN MARIJUANA REGULATORY
AGENCY, a Michigan state agency,
ANDREW BRISBO, Individually, JULIE
KLUYTMAN, Individually, DESMOND
MITCHELL, Individually, CLAIRE
PATTERSON, Individually.

        Defendants.

Case No. 21-000219-MB

HON. CHRISTOPHER M. MURRAY

David R. Russell (P68568)
Brandon M. H. Schumacher (P82930)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
Counsel for Plaintiffs
313 S. Washington Square
Lansing, MI 48933
(517) 371-8150
drussell@fosterswift.com
bschumacher@fosterswift.com

Kevin M. Blair (P76927)
HONIGMAN, LLP
Co-Counsel for Plaintiffs
222 N. Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0716
kblair@honigman.com

**11/23/2021 BRIEF IN SUPPORT OF PLAINTIFFS VIRIDIS LABORATORIES, LLC'S
AND VIRIDIS NORTH, LLC'S *EX PARTE* MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

Document received by the MI Court of Claims.

## I.    INTRODUCTION

Plaintiffs Viridis Laboratories, LLC ("Viridis Lansing") and Viridis North, LLC ("Viridis Bay City") (collectively, "Plaintiffs") are marijuana safety compliance facilities that are licensed by the Defendant Michigan Marijuana Regulatory Agency ("MRA") to sample and test adult-use and medical cannabis products.

On November 17, 2021, the MRA issued an unlawful recall bulletin for _all_ products that were tested by Viridis Lansing's and Viridis Bay City's facilities between August 10, 2021, and November 16, 2021. Ever since the MRA first mentioned the possibility of a recall to Plaintiffs (on November 15, 2021), the MRA has articulated only two bases for the recall.[1]  First, the MRA asserted that Plaintiffs had failed to keep a log book showing the precise time that test samples were placed in and subsequently removed from an incubator.  Upon hearing this initial purported basis for the recall, Plaintiffs promptly explained, and the MRA even specifically acknowledged, that such logs are not required by statute, rule, any informal MRA guidance, or Plaintiffs' Standard Operating Procedures ("SOP").[2]

At that point, the MRA shifted gears and said the recall was supposedly warranted because of some test results that the MRA obtained from Plaintiffs' competitors.  Specifically,

---

[1] The MRA has only articulated these purported bases via phone and/or Microsoft Teams meetings.  The MRA has yet to provide any written notice regarding the purported bases for the recall.  As detailed below, the MRA's failure and refusal to provide written notice is just one example from the long list of things the MRA has done in direct violation of its statutory authority and/or rules.

[2] The statutory regime, and the MRA's promulgated rules do not mandate a certain testing methodology.  Rather, the rules require that safety labs formulate their own SOPs, which then must be validated and approved by an accrediting body.  There is no dispute here that Plaintiffs SOPs were properly validated and approved, and none of the SOPs required Plaintiffs to maintain any logs documenting the time that each sample went in/out of the incubator.  Also, Plaintiffs strongly suspect, upon information and belief, that several licensed safety labs in Michigan do not keep such logs.  Plaintiffs have even specifically raised that objection with the MRA, but the MRA has ignored it and refused to respond.

Document received by the MI Court of Claims.

the MRA had five of Plaintiffs' competitors re-test ten samples that Viridis Lansing had previously tested and passed for aspergillus (i.e., a "passed" aspergillus test means no aspergillus was detected). As outlined more fully in Plaintiffs' Verified Complaint, there are several reasons that these re-tests do not support recalling any of Plaintiffs' tested product.[3] But for purposes of this Motion only, even if the Court assumes arguendo that these flawed test results from competitors support the recall of *Viridis Lansing's* tested product, these test results (i.e., the MRA's second of two purported bases for the recall) *have nothing to do with Viridis North*. All ten of the samples that were re-tested were initially tested at Viridis Lansing. The MRA has thus far failed and/or refused to explain why they chose to only have competitors re-test samples from Viridis Lansing or how those Viridis Lansing re-test results reflect in any way on the accuracy of test results at Viridis Bay City (which is a separate entity, with different ownership, its own MRA licenses, and its own separate accreditation, etc.).

Further, the MRA has blatantly exceeded its authority and violated several of its own rules. As set forth in Plaintiffs' Verified Complaint, Plaintiffs disagree with and are challenging the entirety of the recall, which is not supported by any law or rule. At a minimum, the Court should enjoin the MRA from enforcing the two most illogical aspects of the recall that are causing immediate and irreparable harm, not only to Plaintiffs but across the Michigan cannabis industry:

---

[3] For example, four of the ten re-test results corroborated Viridis Lansing's results, which the MRA refused to take into consideration. Further, Plaintiffs' competitors are clearly biased, and some have publicly indicated that they want to reduce Plaintiffs' market share, if not put Plaintiffs out of business entirely. Further, there was a significant passage of time between Viridis Lansing's initial test and the competitors' re-test. Further, aspergillus is not homogenous and can vary from one marijuana bud to the next, even within a small sample size. In sum, this was a true apples-to-oranges comparison. The fact that a competitor found aspergillus on one bud weeks after Viridis Lansing tested and found no aspergillus on a *different* bud weeks earlier says nothing about the accuracy of Viridis Lansing's test result.

Document received by the MI Court of Claims.

*First*, the overbroad recall fails to recognize that Viridis Lansing and Viridis Bay City are *separate* entities with *different* ownership structures that hold *separate* licenses and *separate* accreditations for their independent activities that are carried out in different locations. The audited samples were all provided by Viridis Lansing, *not* by Viridis Bay City. At minimum, the recall should not apply to product that was tested by Viridis Bay City.

*Second*, the overbroad recall covers all of Plaintiffs' previously tested products, including products that were tested for items unrelated to specific (although unfounded) concerns raised by the MRA regarding aspergillus or other microbials. At minimum, the recall should not apply to product that was tested for items other than aspergillus or other microbials.

Defendants' unreasonable and unsupported actions exceed the scope of their authority and have far-reaching implications beyond the harm that they are causing to Plaintiffs. The Defendants' actions are causing the burgeoning marijuana industry in Michigan to effectively grind to a halt by forcing retailers and others in the supply chain to shut down operations right at the start of a busy holiday season. To avoid the immediate and irreparable harm being caused by Defendants if the overbroad recall remains in effect as issued, Plaintiffs respectfully request that the Court issue a temporary restraining order and preliminary injunction enjoining Defendants from continuing to enforce the recall as written. At a minimum, Plaintiffs respectfully submit that the Court should issue a temporary restraining order and preliminary injunction that enjoin Defendants from enforcing the recall as to: (1) products tested by Viridis Bay City; and (2) products that were tested for items other than aspergillus or other microbials.

Plaintiffs further request that the Court immediately allow Viridis Lansing and Viridis Bay City to resume testing for microbials. The MRA's actions with respect to continued testing are either an unlawful suspension or restriction of Plaintiffs' licenses. The MRA, however did

Document received by the MI Court of Claims.

not follow the correct procedures to suspend or restrict Plaintiffs' license.  Instead, the MRA has orchestrated its efforts in a manner to prevent Plaintiffs from obtaining any form of relief from an administrative proceeding or judicial review.  The MRA's conduct is an excessive and unnecessary regulatory overreach and abuse of authority.

## II.   FACTUAL BACKGROUND

### A.   Viridis Lansing and Viridis Bay City are Different Entities that Operate Separate Facilities

Plaintiffs Viridis Lansing and Viridis Bay City are marijuana safety compliance facilities that are each licensed by the MRA under both the Medical Marijuana Facilities Licensing Act ("MMFLA") and the Michigan Regulation and Taxation of Marihuana Act ("MRTMA") to sample and test adult-use and medical cannabis products.  (Verified Compl. ¶ 19.)   Viridis Lansing and Viridis Bay City were founded by former Michigan State Police laboratory scientists with more than 75 years of combined experience working within a strictly regulated and nationally accredited forensic science industry, which included high volumes of marijuana testing.  (*Id.* ¶ 21.)

Although they both have the word "Viridis" in their names, Viridis Lansing and Viridis Bay City are separate and distinct business entities with different ownership structures.  (*Id.* ¶ 9.) Viridis Lansing and Viridis Bay City are located in different cities and operate separate facilities. (*Id.* ¶¶ 7-8.)  Viridis Lansing conducts business through a laboratory established in the City of Lansing, Ingham County, Michigan.  (*Id.* ¶ 7.)  Viridis Bay City conducts business through a laboratory established in Bay City, Bay County, Michigan.  (*Id.* ¶ 8.)

Viridis Lansing received its license from the MRA to test medical marijuana on June 5, 2019, and its adult-use license on December 7, 2020.  (*Id.* ¶ 22.)  Viridis Bay City received a separate license from the MRA to test medical marijuana on April 6, 2020, and a separate adult-

Document received by the MI Court of Claims.

use license on June 10, 2020.  (*Id.* ¶ 23.)  The MRA also requires marijuana safety compliance

facilities to be accredited.  (*Id.* ¶ 24.)  Viridis Lansing received accreditation on July 23, 2020.

(*Id.* ¶ 26.)  Viridis Bay City received separate accreditation on February 4, 2021.  (*Id.* ¶ 27.)

### B.    The MRA Has Continuously Monitored Plaintiffs

Licensed marijuana safety compliance facilities like Viridis Lansing and Viridis Bay City

are required to follow the requirements of the MMFLA and MRTMA, as well as the rules

promulgated by the MRA.  Under the MRA's Sampling and Testing Rules (the "Testing Rules"),

a laboratory, which is defined to include marijuana safety compliance facilities like Viridis

Lansing and Viridis Bay City, must perform various tests on batches of marijuana products.

MAC R 420.301(m) and 305(3)(a).

The Testing Rules require that Viridis Lansing and Viridis Bay City "use analytical

testing methodologies for the required safety tests … that are validated by an independent third

party and may be monitored on an ongoing basis by the agency or a third party.  In the absence

of reference to compendia or published methods, Appendix K of Official Methods of Analysis

authored by the Association of Official Analytical Chemists must be published in full.  The

agency shall approve the validated methodology used by the laboratory and confirm that it

produces scientifically accurate results for each safety test it conducts." MAC R. 402.305(2).

The MRA relies on third party accrediting bodies for accreditation and approvals. Two

such bodies are the A2LA and the AOAC. (Verified Compl. ¶¶ 25, 33.)  Here, Viridis Lansing

and Viridis Bay City use the A2LA ISO 17025:2017 accredited methods. The A2LA is the

leading accreditation body in the nation for cannabis testing laboratories. (*Id.* ¶ 25.) The A2LA

performed a full review of the validation and SOPs of Viridis Lansing's and Viridis Bay City's

testing methods prior to their accreditation on July 23, 2020, and February 4, 2021, respectively.

(*Id.* ¶ 30.)  In June 2021, Viridis Lansing successfully passed their annual accreditation

Document received by the MI Court of Claims.

surveillance assessment by the A2LA. (*Id.* ¶ 42.) This assessment included the review of all SOPs, which do not include and never included a requirement that Plaintiffs keep log books to show how long samples were placed in an incubator.

In addition to accreditation by third party entities, the MRA has continuously monitored Plaintiffs' testing methods since Viridis Lansing and Viridis Bay City began testing. (*Id.* ¶ 37.) Through its continuous monitoring of Viridis Lansing and Viridis Bay City, the MRA was fully aware of their respective SOPs, which never included keeping log books to show how long samples were left in an incubator. (*Id.* ¶ 82.) To the best of Plaintiffs' knowledge, many laboratories have not, or do not, keep log books, which the MRA has knowledge of, yet has never issued any recall related to this failure. (*Id.* ¶ 85.)

C.     **The MRA's Arbitrary, Overbroad, and Unfounded Recall**

By email dated October 25, 2021, which was sent directly to Plaintiffs' competitors, the MRA directed that, as part of an ongoing audit, ten of Viridis Lansing's previously tested samples were to be retested by other marijuana safety compliance facilities. (*Id.* ¶ 68.) The MRA directed that the samples were to be sent for microbial testing, including aspergillus, total yeast and mold, foreign matter, and pesticides. (*Id.*) The MRA "randomly" selected several of Viridis Lansing's competing marijuana safety compliance facilities for the audit testing. (*Id.*) Six out of ten of Viridis Lansing's previously tested samples that were sent to its competing labs as part of the October Audit were "failed." (*Id.* ¶ 71.) The MRA did not include any of Viridis Bay City's samples in this audit, and thus no samples from Viridis Bay City were retested. (*Id.* ¶ 68.)

On November 15, 2021, the MRA informed both Viridis Lansing and Viridis Bay City that it was going to issue a notice a recall of <u>all</u> of Viridis Lansing's and Viridis Bay City's products that were tested between August 10, 2021, and November 16, 2021. (*Id.* ¶ 75.) As

Document received by the MI Court of Claims.

outlined above, the MRA only articulated two purported bases for the recall, and the MRA did not even mention the second purported basis until after Plaintiffs negated the initial purported basis and the MRA specifically conceded that the absence of log books alone would not warrant a recall (because, again, such logs are not required by statute, rule, guidance, or SOP and, upon information and belief, are not kept by many licensed safety compliance facilities in Michigan).

Plaintiffs challenged the MRA's proposed recall on several grounds, including the following two grounds that are relevant to this Motion: First, Viridis Bay City challenged the breadth of the MRA's proposed recall because the MRA did *not* request that it send *any* samples for audit. (*Id.* ¶ 92.) Although Viridis Lansing and Viridis Bay City also dispute the use of the test results to justify the recall as a threshold matter because of competitors' bias, passage of time, and lack of homogeneity across tests, at minimum there is absolutely no basis to include product tested by Viridis Bay City in the recall. Because Viridis Bay City is a separate entity from Viridis Lansing, the only grounds the MRA had for recalling Viridis Bay City's tested products was the lack of log books. As shown in the following email correspondence, the MRA itself, through its Operations Director Desmond Mitchell, had indicated that a lack of log book, on its own, would not warrant a recall:

> **From:** Mitchell, Desmond (LARA) [mailto:MitchellD6@michigan.gov]
> **Sent:** Wednesday, November 17, 2021 1:48 PM
> **To:** Blair, Kevin M.; Russell, David
> **Cc:** gmichaud@viridisgrp.com; mglinn@viridisgrp.com; Kluytman, Julie (LARA); Patterson, Claire (LARA); Hunt-Scully, Risa (AG); Mark Fisk (mfisk@byrumfisk.com); consulting@pmbbiotek.com
> **Subject:** RE: Follow up & Summary of test results & Draft Recall Bulletin
>
> Kevin,
>
> I can't wait until tomorrow. I'll give you until 3 pm. Also, you're aware that the absence of the logs is only part of the issue.

Document received by the MI Court of Claims.

From: Blair, Kevin M. <KBlair@honigman.com>
Sent: Wednesday, November 17, 2021 1:39 PM
To: Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; Russell, David <DRussell@fosterswift.com>
Cc: gmichaud@viridisgrp.com; mglinn@viridisgrp.com; Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>;
Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Hunt-Scully, Risa (AG) <HuntScullyR@michigan.gov>;
Mark Fisk (mfisk@byrumfisk.com) <mfisk@byrumfisk.com>; consulting@pmbbiotek.com
Subject: RE: Follow up & Summary of test results & Draft Recall Bulletin

---

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

---

Desmond –

You said repeatedly yesterday that the absence of logs alone would not justify a recall. You pointed to the test results as the primary basis for warranting a recall. But recall that there are no test results at all related to Viridis North's results. At a minimum, Viridis North should be carved out of this recall. They are a separate licensee, with different ownership, and there is no reason they should get swept into this crippling recall just because their name also includes the word "Viridis."

Also, we are doing all we can to reconnect with Mr. Bird and Ms. McIntyre to get statements from them. They are tied up in other meetings and we haven't been able to reach them, but again, Mr. Bird has been copied on all these emails and we're confident that we have not misrepresented his views. We are asking that you give us until 8:30 tomorrow to get those statements. The stakes here couldn't be any higher, and we urge you not to rush forward with this simply because these folks weren't instantaneously available to drop everything and write statements.

Kevin

(*Id.*, ¶¶ 87-89 and Exhibit I thereto at page 16 of 42.)  Viridis Bay City also offered for the MRA to review video evidence that it already had in its possession and to supplement that with further video so that the MRA could confirm that, even without log books, Viridis Bay City had properly incubated the samples for the required time.  (*Id.* ¶ 97.)   The MRA completely ignored Plaintiffs' repeated pleas to use the video evidence to corroborate Plaintiffs' repeated representations that they were 100% confident that all samples were incubated for the appropriate amount of time.  Indeed, the MRA refused to even consider the video evidence.

Second, both Viridis Bay City and Viridis Lansing also challenged the MRA's proposed recall on the grounds that it was overbroad because it included samples that were *not* tested for microbials by either Viridis Bay City or Viridis Lansing and would have nothing to do with the alleged deficiencies regarding aspergillus or other microbials. (*Id.* ¶ 93.)

Document received by the MI Court of Claims.

When the MRA would not change its position on the recall based on Plaintiffs' own correspondence, Plaintiffs contacted representatives from the AOAC and the vendor of the aspergillus testing platform, bioMerieux, to learn their positions on the matter, especially as to the MRA's use of several of Plaintiffs' competitors to perform the sample audits. (*Id.* ¶ 94.)

Patrick Bird, a widely respected consultant from the AOAC, whom the MRA relies upon for his expertise in laboratory testing methodologies, indicated that the MRA's methodology was scientifically flawed and would not be sufficient to support a recall:

> The additional testing of materials at other labs is not something that I believe supports a recall as there are many factors in play that may have lead to the different results (same batch but different test portions analyzed, time gaps in analysis from one lab to another, etc).

Verified Complaint, ¶ 95 and Exhibit I thereto at page 42 of 42.

Maria McIntyre, from bioMerieux, the aspergillus testing platform's vendor, likewise indicated that the methodology used by the MRA was not able to produce scientifically accurate or reliable results and that, in essence, the only thing that the MRA was basing its recall on was the absence of log books:

> 3.   When there is uncertainty in results either retesting or confirmation testing generally holds greater value than a multi-lab study.  In such a study, there are many variable[s] in the equation leading to variability.
>
> 4.   The iso files have been reviewed and the assay appears to be running properly.  The files have been transferred to the R&D team who created this assay for a 2nd opinion and to determine if other areas require addressing.

*Id*, ¶ 96 and Exhibit I thereto at pages 14-15 of 42.

Notwithstanding irrefutable evidence that the MRA's rationale for a recall was not based in science, the MRA refused to budge and issued the recall bulletin on November 17, 2021. (*Id.* ¶ 98.)

Document received by the MI Court of Claims.

Curiously, the MRA managed to issue the recall in a way that was at once very delayed and very rushed. The MRA knew for years that Plaintiffs were not keeping incubator time logs. Indeed, the MRA observed Plaintiffs performing microbial tests and aspergillus tests countless times using incubators without incubator time logs. It was not until October 26, 2021, that the MRA first indicated that it wanted Plaintiffs to begin keeping such logs (which Plaintiffs promptly implemented and have been logging ever since). If the absence of logs itself were a health and safety issue, the recall should have been initiated on October 26. But, as the MRA has specifically and repeatedly conceded since, the absence of logs alone is not a health or safety issue. The MRA also had 90% of the competitors' retest results by November 1, 2021 (100% by November 5, 2021), but the MRA then sat on that information for weeks, which further undermines any claim that there was any urgent health and safety issue.

Upon information and belief, one or more MRA staff told some of Plaintiffs' competitors during the week of November 8, 2021, that a recall would be issued for all product tested by Viridis Bay City and Viridis Lansing. In contrast, the MRA never mentioned a word about a potential recall (or even hint that one might be coming) to Plaintiffs until Monday, November 15, 2021. As shown in the email exchanges from then until the recall was publicly announced on November 17, 2021, Plaintiffs did everything they could to prevent the MRA from making this colossal mistake. Plaintiffs obtained third-party testimonials from leading experts (who are far more qualified than any of the four scientists on staff at the MRA) that the competitors' retest results were an unprecedented and terrible reason to issue a recall. Plaintiffs highlighted how illogical the threatened recall was, including that there was zero evidence to include Viridis Bay City in the recall, but the MRA refused to acknowledge or discuss that issue. Plaintiffs literally begged the MRA to get on the phone or video conference to discuss these issues, but the MRA

Document received by the MI Court of Claims.

insisted on issuing the recall as fast as possible (never mind that the MRA had 100% of the information that they contend supports the recall weeks before the bulletin was issued, and they only told Plaintiffs' competitors that the recall was coming).

### D.    The MRA's Post-Recall Conduct

After the MRA issued the recall notice, it indicated to Plaintiffs in an email that because they had "corrected" the log book issue by implementing said process into their microbial testing methodology and procedures, that they were approved to re-commence microbial analysis testing.  (*Id.*, ¶ 108.)  The MRA *then changed its position* in less than 24 hours and indicated that Plaintiffs could only test for aspergillus.  The MRA subsequently changed its position yet again by informing Plaintiffs' customers, without informing Plaintiffs, that Plaintiffs cannot perform any microbial testing as a result of the recall.  (*Id.*, ¶ 109 and Exhibit K.)

The MRA's recall notice has put growers, processors, retailers, and others connected to Plaintiffs in chaos because of its breadth and unexpectedness.  The recall, by its terms, allows those licensees affected by it to have their products retested for microbial content.  (*Id.*, ¶ 110.) Several of Plaintiffs' existing customers called the MRA to verify that Plaintiffs could perform the microbial analysis retest. In response, the MRA asserted that Plaintiffs are prohibited from performing any analysis related to microbials. Plaintiffs' customers have informed Plaintiffs of the MRA's position and statements on its ability to perform microbial analysis.  (*Id.*, ¶ 111.)  The MRA told Plaintiffs' customers one thing and Plaintiffs another.  (*Id.*, ¶ 112.)  They both cannot be right, and the MRA has taken contrary positions.  The MRA has refused to provide Plaintiffs with adequate, written, or clear guidance on what it may do moving forward and has actively sought to hinder their ability to address the recall with their customers.  (*Id.*, ¶ 114.)

In conversations with Plaintiffs regarding their ability to conduct microbial testing, the MRA sent Plaintiffs a "check list" of items that needed to be completed prior to it re-authorizing

Document received by the MI Court of Claims.

Plaintiffs to complete microbial analysis. During a subsequent zoom call, the MRA revealed that the check list was even longer than originally anticipated, but represented that only the items listed in bold needed to be completed for Plaintiffs to get up and running. In a follow up email, Plaintiffs sought to verify what needed to be completed on the check list (not the entire list but only bolded items). However, Julie Kluytman changed the MRA's position yet again, moved the goal posts back, and indicated that everything on the checklist needed to be approved before Plaintiffs could re-commence microbial testing. (*Id.*, ¶ 116 and Exhibit I.)

Plaintiffs managed to complete or substantially comply with every item listed on the checklist and sought the MRA's approval the following day. The MRA nevertheless rejected Plaintiffs' efforts and demanded that it start its efforts over from scratch.  As of November 22, 2021, and subsequent to the unlawful recall, the MRA is now allowing growers who originally had samples tested by Plaintiffs to submit new samples to other safety compliance facilities to be retested and treating the Plaintiffs' test results as being failed tests. (*Id.*, ¶ 118.)   The MRA is requiring these retests to have two consecutive passes and then allowing the growers to take the products to market.

These retests include samples that Plaintiffs have tested that have not been homogenized, have been cross-contaminated with unground foreign matter, had spatulas and tweezers poked in the sample during the initial testing, and have otherwise been adulterated during the testing process.  By allowing these retests, the MRA is deviating from each marijuana safety compliance testing facility's approved SOPs and the MRA's own rules. (*Id.*, ¶ 121.)

## III.   LEGAL STANDARD

MCR 3.310 authorizes issuance of an *ex parte* temporary restraining order and a preliminary injunction.  MCR 3.310(A), (B).  The Michigan Supreme Court has held that "the

Document received by the MI Court of Claims.

object of preliminary injunctions is to preserve the status quo . . . ." *Niedzialek v Journeymen Barbers, Hairdressers & Cosmetologists*, 331 Mich 296, 301; 49 NW2d 273 (1951) (internal quotation marks and citation omitted).  The following four-part test is used to determine whether injunctive relief should issue:

1.   The likelihood the movant will prevail on the merits;

2.   Demonstration that the movant will suffer irreparable injury if an injunction is not granted;

3.   Whether harm to the movant in the absence of an injunction outweighs harm to the opposing party if an injunction is granted; and

4.   Harm to the public interest if an injunction issues.

*Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157–58; 365 NW2d 93 (1984).  These are "factors to be balanced, not prerequisites which must be met." *In re De Lorean Motor Co*, 755 F2d 1223, 1229 (CA 6, 1992); see also *Niedzialek*, 331 Mich 296 at 300-301 ("If the...rights involved will be best preserved by granting temporary injunctive relief in a suit presenting issues of controverted merit, such relief should be granted."). An examination of each factor demonstrates that injunctive relief is warranted here.

## IV.   ARGUMENT

### A.   Plaintiffs Are Likely to Succeed on the Merits of Their Claim

The unilateral recall issued via bulletin is wholly improper and illegal and should be reversed in its entirety for the reasons described in Plaintiffs' Verified Complaint.   For purposes of this Motion, Plaintiffs will focus primarily on the two most egregiously illogical aspects of the recall: (1) the recall of products tested by Viridis Bay City; and (2) the recall of cannabis products that were *not* analyzed by either Viridis Bay City or Viridis Lansing for aspergillus or other microbials.   By attempting to enforce these overbroad aspects of the recall, Defendants

Document received by the MI Court of Claims.

have violated their own rules regarding recalls, and have improperly and arbitrarily created new rules relating to when a recall may be instituted without following the requirements of the Michigan Administrative Procedures Act ("APA") (MCL 24.201, *et seq.*).   Defendants' new rules are substantively and procedurally invalid under the APA and also violate Plaintiffs' procedural and substantive due process rights under the Michigan Constitution and the United States Constitution.

>    *1.      The MRA violated its own rules regarding recalls, and the MRA is without authority to summarily restrict Plaintiffs' licenses.*

Under MAC R.420.806(1), the MRA may impose sanctions on a 'licensee found in violation of the acts or the [] rules," including, but not limited to "[m]arihuana license denial[,]" "[l]imitations on a marihuana license[,]" and "[r]evocation, suspension, nonrenewal of a license, or an administrative hold on a marihuana license." The MRA may sanction a licensee after it has conducted an investigation and found that a licensee has violated the MMFLA, MRTMA, or the other rules promulgated thereunder, in which case it must "serve the formal complaint on the licensee by certified mail, return receipt requested, or in person by a representative of the agency." MAC R.420.808(1).

Once the licensee receives the formal complaint, it has three options: (1) to request a compliance conference; (2) to request a contested case hearing; or (3) to request both a compliance conference and a contested case hearing. MAC R.420.808(2), (3).   Under MAC R.420.704(1), "[a] licensee who has been notified of a marihuana license violation, or of the agency's intent to suspend, revoke, restrict, or refuse to renew a marihuana license or impose a fine, may be given an opportunity to show compliance with the requirements *before the agency taking action* as prescribed by these rules." This is consistent with MCL 24.292(1), which states, in relevant part, that "[b]efore beginning proceedings for the suspension, revocation, annulment,

Document received by the MI Court of Claims.

withdrawal, recall, cancellation or amendment of a license, an agency shall give notice, personally or by mail, to the licensee of facts or conduct that warrants the intended action. The licensee shall be given an opportunity to show compliance with all lawful requirements for retention of the license…"

Under MAC R.420.704(2), "[a] licensee aggrieved by an action of the agency to suspend, revoke, restrict, or refuse to renew a marihuana license, or impose a fine, may request a contested case hearing in writing within 21 days after service of the notice of *the intended action.*" At that contested case hearing, the MRA "has the burden of proving, by a preponderance of the evidence, that sufficient grounds exist for *the intended action* to suspend, revoke, restrict, or refuse to renew a state license, or to impose a fine, or summarily suspend a license." Once the contested case hearing is complete, the administrative law judge issues a proposal for decision, MAC R.420.707, and the MRA makes a decision in writing, which is its final decision for purposes of judicial review. MAC R.420.708.

Implicit in the above provisions is the idea that a licensee must receive notice of a suspension, revocation, restriction, or nonrenewal prior to that action being taken by the MRA. That comports with basic notions of due process and the APA, which is applicable to licensing actions taken by the MRA. *See, e.g.,* MCL 333.27407(2) ("The [MRA] shall comply with the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328, when denying, revoking, suspending, or restricting a license or imposing a fine.").

The rules do explicitly contemplate that the MRA may act summarily and not offend notions of due process, but only in certain, limited circumstances. As courts have recognized, "[a]gencies may, consistent with the principles of due process, summarily suspend a license without hearing if necessary to protect the public interest." *M & S, Inc v Attorney General,* 165

Document received by the MI Court of Claims.

Mich App 301, 305; 418 NW2d 441 (1987) (citing *Rogers v Bd of Ed, Trenton Public Schools,* 61 Mich App 682; 233 N.W.2d 141 (1975). However, while the MRA's own rules allow it to deny, revoke, suspend, restrict, or not renew a license, the same rules *only* allow it to *suspend* a license *summarily.* Specifically, MAC R.420.705(1) allows the MRA to "summarily suspend[] a marihuana license without notice or hearing upon a determination that the safety or health of patrons or employees is jeopardized by continuing the marihuana business's operation..." Similarly, the APA allows a license to be summarily suspended "[i]f the agency finds that the public health, safety or welfare requires emergency action..." MCL 24.292(2). In such circumstances, both the APA and the MRA's rules build in procedural safeguards, namely that a hearing before an administrative law judge be "promptly commenced and determined." *Id.*; *see generally* MAC R.420.705; *see, also,* Mich Admin Code, R 420.705(1).

Plaintiffs specifically and repeatedly raised this objection with the MRA, but those objections fell on deaf ears. Plaintiffs even explicitly shared their concern that the MRA was deliberately not using the established summary suspension processes in order to avoid any checks and balances or potential oversight:

> **From:** Blair, Kevin M. <KBlair@honigman.com>
> **Sent:** Thursday, November 18, 2021 12:20 PM
> **To:** Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>; Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; MRA-scf <MRA-scf@michigan.gov>; Hunt-Scully, Risa (AG) <HuntScullyR@michigan.gov>
> **Cc:** Todd Welch <twelch@viridisgrp.com>; Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>; Russell, David <DRussell@fosterswift.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
> **Subject:** RE: Tomorrow
>
> Adding Risa and reiterating my request that we get on the phone asap as things are getting worse by the minute.
>
> You are effectively shutting down Viridis without following the summary suspension procedures. We suspect that is all deliberate to avoid any oversight. If this is a health and safety issue, you know there are processes to follow.

*See* November 18, 2021, Email exchange (attached as **Exhibit A**).

Document received by the MI Court of Claims.

In addition, the MRA's actions related to Plaintiffs' ability to conduct microbial retesting in connection with the recall are contrary to the promulgated rules and the APA. The MRA has previously approved Plaintiffs' to conduct microbial testing on marihuana. Thus, the MRA's position that Plaintiffs are now prohibited from performing such analysis is either: (1) a restriction on Plaintiffs' licenses pursuant to MAC R.420.806(1), (2)(a); or (2) a constructive summary suspension of Plaintiffs' licenses pursuant to MCL 24.292(2) and MAC R.420.705(1).

If this Court finds that the MRA's prohibition on microbial testing by Plaintiffs is a constructive suspension or restriction on Plaintiffs' licenses, than the MRA has failed to comply with the APA and its own rules. Namely, as set forth above, the MRA's rules contemplate that, before a license is sanctioned, the MRA will serve them with a formal complaint (MAC R.420.808(1)) and allow them the opportunity for a compliance conference and/or contested case hearing (MAC R.420.808(2), (3) and MAC R.420.704(1), (2)) *prior to taking action* on such sanctions, including a suspension or restriction. Such a process is consistent with the APA and traditional due process norms. Moreover, as discussed more fully below, the APA and the MRA's rules allow it to summarily *suspend* a license, but not to summarily *restrict or limit* a license.

The rules and commonsense make clear that a suspension and a license restriction or limitation are separate and distinct sanctions that the MRA can levy against a licensee. See, e.g., MAC R.420.806(1), (2). Yet, the rules and APA only allow the MRA to summarily *suspend* a license. See, e.g., MAC R.420.705(1) and MCL 24.292(2). Thus, the MRA lacks any authority to summarily restrict or limit a license, such as by prohibiting Plaintiffs' from conducting microbial analysis. The policy analysis behind this differentiation is clear: summary suspensions are only meant to be utilized when "the public health, safety or welfare requires emergency action," MCL

Document received by the MI Court of Claims.

24.292(2), which necessitates a licensee immediately ceasing *all* operation in order to alleviate such a threat. If a licensee's operations need not be ceased, but only limited or restricted, in order to address a claimed emergency, than the public health, safety, and welfare cannot be said to be threatened to such an extent that an agency can deprive a licensee of rudimentary due process.

While the MRA cannot summary restrict a license, it may summarily suspend a license. However, if this Court finds that the MRA's prohibition on microbial testing by Plaintiffs is a constructive summary suspension of their licenses, than the MRA has violated the procedures related to summary suspensions as set forth in the APA and the MRA's own rules. Namely, pursuant to MCL 24.292(2), an agency may only issue a summary suspension if it "finds that the public health, safety or welfare requires emergency action *and incorporates this finding in its order…*" Here, the MRA has neither issued an order nor specifically set forth a finding of emergency that would justify depriving Plaintiffs' of their due process rights in the name of public health, safety, or welfare. Moreover, in the case of a summary suspension, both the APA and MRA rules require that an administrative proceeding on the summary suspension be "promptly commenced." MCL 24.292(2). See, also, MAC R.420.705(1) ("If the agency summarily suspends a marihuana license without notice or hearing upon a determination that the safety or health of patrons or employees is jeopardized by continuing the marihuana business's operation, a post-suspension hearing must be held promptly to determine if the suspension should remain in effect…"). Here, again, the MRA has refused to request or schedule such a hearing. Consequently, even if the MRA's prohibiting Plaintiffs from conducting microbial testing is viewed as a summary suspension of their licenses, the MRA has failed to abide by the required procedures set forth in the APA and its own rules related to such sanction.

Document received by the MI Court of Claims.

In sum, the rules clearly provide that the MRA must give licensees written notice and an opportunity for a hearing before issuing a recall. The MRA refused to follow that process here. The MRA also refused to follow the process to summarily suspend Plaintiffs' licenses. Both of these issues are beyond dispute and thus Plaintiffs are very likely to succeed on both.

>  2.      *The Defendants have improperly and arbitrarily created new rules for the recall of cannabis products.*

The APA defines a "rule" as "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency." MCL 24.207. As applied here, the only relevant MRA administrative rule relating to recalls is found at MAC R.420.505(2), which provides "[t]o ensure access to safe sources of marihuana products, the agency, if alerted in the statewide monitoring system, may place an administrative hold on marihuana products, recall marihuana products, issue safety warnings, and require a marihuana business to provide information material or notifications to a marihuana customer at the point of sale." This rule, by its plain language, does not provide any standards by which the MRA can institute a recall.

The MRA nevertheless has unilaterally created new administrative rules regarding recalls by issuing the overbroad recall that applies to products tested by Viridis Bay City and products that were tested by both Plaintiffs for reasons that have nothing to do with aspergillus or microbials. The MRA's arbitrary rule that permits a recall of these products completely ignores that Viridis Bay City is an independent entity that operates a distinct and separate facility from Viridis Lansing. (Verified Compl. ¶ 145.) The MRA *did not retest* any samples from Viridis Bay City. (*Id.*) Thus, in effect, the only basis for a recall of products tested by Viridis Bay City

Document received by the MI Court of Claims.

is the lack of an incubation log book. But a marijuana safety compliance facility such as Viridis Bay City is *not* required by statute, administrative rule, or even the MRA's own technical guidance to keep a log book of hours in an incubator or temperature. (*Id.* ¶ 90.) Nor does the AOAC or the vendor of the aspergillus testing platform, bioMerieux, require such a log book. (*Id.*) The MRA observed Viridis Bay City and Viridis Lansing perform testing for aspergillus for over a year and has *never* raised concerns related to either facility not having a log book for its respective incubation process. (*Id.* ¶¶ 75-76.) Indeed, the MRA has itself acknowledged that the absence of incubator log books is insufficient to warrant a recall of any kind, and especially one of this magnitude. (*Id.*)

The same is true with respect to products that are encompassed by the recall, but that were tested for items unrelated to aspergillus or other microbials. The tests run by Plaintiffs in connection with a product's potency, terpene content, or other matters have nothing to do with the alleged issues regarding aspergillus or other microbials, and there is no reason for these products to be recalled.

By nevertheless instituting the overbroad recall that applies to these products, the MRA has created the following new rules regarding recalls: (1) when a marijuana safety compliance facility fails to keep a log book for an incubator used for microbial analysis showing temperature and length of incubation of the sample, the MRA may institute a recall of the cannabis products tested by the marijuana safety compliance facility; and (2) the MRA can recall all of the marijuana tested by a safety compliance facility, even when there are no alleged issues with certain categories of cannabis tested by that facility. These new rules do not interpret, guide, or explain the MRA's positions on existing rules and instead provide *new standards* that Plaintiffs

Document received by the MI Court of Claims.

must follow to stay in compliance with MRA regulations. The new rules invert the status quo entirely and are procedurally and substantively invalid.

### 3.   *The Defendants' new rules are procedurally invalid.*

When proposing administrative rules, agencies must comply with the mandates of the APA by providing the public with notice and an opportunity to be heard before the rules are enforced. See *Blank v Dep't of Corr*, 462 Mich 103, 123-24; 611 NW2d 530 (2000).  The APA further requires that, when publishing proposed administrative rules, an agency must hold a public hearing and provide notice of the hearing before the rule's adoption. *Id.*  The APA's procedures are "calculated to invite public participation in the rule-making process, prevent precipitous action by the agency, prevent the adoption of rules that are illegal or that may be beyond the legislative intent, notify affected and interested persons of the existence of the rules and make the rules readily accessible after adoption." *Mich State AFL-CIO v Sec of State*, 230 Mich App 1, 21; 583 NW2d 701 (1998)(citations omitted); accord, e.g. *Int'l Union, United Mine Workers of Am v MSHA*, 407 F3d 1250, 1259; 366 US App DC 54, 63 (2005).

"Generally, the failure of an administrative agency to follow the approval process of the APA renders the rule void." *Blank v Dep't of Corr*, 222 Mich App 385, 392; 564 NW2d 130 (1997), *aff'd in part*, 462 Mich 103 (2000). Yet, in certain circumstances, an agency may circumvent the APA's safeguard procedures and promulgate an emergency rule.  Under MCL 24.248, an agency may promulgate an emergency rule if three conditions are satisfied: (i) the "agency finds that preservation of the public health, safety, or welfare requires promulgation of an emergency rule without the notice and participation procedures required by [the APA]"; (ii) the agency "states in the rule the agency's reasons for the finding"; and (iii) "the governor concurs in the finding of emergency."  Emergency rules are effective once filed with the Secretary of State and remain in effect for six months, unless extended further.

Document received by the MI Court of Claims.

Because emergency rules "have the force and effect of law and may have serious consequences for many people," courts must be careful to ensure that administrative agencies do not "'short-cut' the general rule-making procedural protections intended by the APA." *Mich State AFL-CIO*, 230 Mich App at 21; 583 NW2d at 710 (quoting *Detroit Base Coal for Human Rights of Handicapped v Dept of Soc Services*, 431 Mich 172, 189; 428 NW2d 335, 343 (1988)).

As applied here, the MRA did not collect public comments, data, or arguments about the new standards set forth in its new rules described above. The MRA's attempt to manufacture a recall based on its new rules should fail on these grounds alone. Furthermore, the MRA did not follow any of the procedures necessary to create an emergency rule under the APA or even take steps to show that a true emergency exists.

The MRA has not and cannot demonstrate that the new rules are necessary for the preservation of the public health, safety, and welfare, and the MRA's own actions belie any alleged emergency. The MRA knew and approved of Viridis Lansing's and Viridis Bay City's SOPs, which never included keeping the logs that are the subject of the MRA's new rules, for years. The public cannot be harmed by a practice that the MRA endorsed and affirmatively stated is not an independent basis for a recall. Indeed, the MRA sat on information about allegedly flawed tests for three weeks and did nothing, which again shows that the recall has nothing to do with public health and safety. Moreover, the MRA failed to include a statement that the governor concurs in the finding of an emergency as required by MCL 24.248. The MRA's foregoing failures render its new rules void under the APA. *See* MCL 24.243.

### 4. *The Defendants new rules are substantively invalid.*

To determine the substantive validity of an administrative rule, courts review a number of factors, including whether the new rule is "arbitrary and capricious." *Blank v Dep't of Corr*, 222 Mich App 385, 406; 564 NW2d 130 (1997) (internal citations omitted); see also *Chesapeake*

Document received by the MI Court of Claims.

*& O R Co v Public Service Com'n*, 59 Mich App 88, 98-99; 228 NW2d 843 (1975); *Thomas*

*Bros, Inc v Sec'y of State*, 90 Mich App 179, 185-186; 282 NW2d 273 (1979).

"A rule is arbitrary if it was fixed or arrived at through an exercise of will or by caprice,

without giving consideration to principles, circumstances, or significance. A rule is capricious if

it is apt to change suddenly or is freakish or whimsical." *Blank v Dep't of Corr*, 222 Mich App

385, 407; 564 NW2d 130, 140 (1997) (citing *Dykstra v Dir, Dep't of Nat Res*, 198 Mich App

482, 491; 499 NW2d 367 (1993)); *see also Kelly v Parole Board*, unpublished opinion per

curiam of the Court of Appeals, issued Aug 3, 2017 (No. 334960), *13 ("A ruling is arbitrary

and capricious when it lacks an adequate determining principle, when it reflects an absence of

consideration or adjustment with reference to principles, circumstances, or significance, or when

it is freakish or whimsical."); *accord, e.g.*, 5 USC § 706(2)(A) (Under the APA, this Court must

"set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."); *Am Lung Ass'n v EPA*, 134 F3d 388,

392; 328 US App DC 232 (1998) (judicial deference "rests on the fundamental premise that

agencies engage in reasoned decision-making.").

The MRA's new rules regarding cannabis tested at Viridis Bay City and cannabis tested

for reasons other than microbials have already caused substantial disruption to the cannabis

industry. Between 60 to 70% of the state's lawful cannabis products have been recalled, the

equivalent of around $229 million in commerce. The true, lasting effects of the rules are

unknown, but the most immediate effect is that Viridis Landing and Viridis Bay City, and likely

other marijuana businesses in Michigan, are likely to go out of business. This is especially

arbitrary and capricious because the MRA has ignored substantial evidence contradicting the

overbroad scope of the recall. Ultimately, the MRA has crafted an overly broad and sweeping

Document received by the MI Court of Claims.

recall that covers products from Viridis Bay City that were *not* subject to any retesting, as well as additional products from Viridis Bay City and Viridis Lansing that were not even subject to microbial analysis by those laboratories.

### 5.     *The Defendants' recall violates procedural due process.*

Plaintiffs' rights to be free from orders that infringe on important rights without adequate process are not only guaranteed by the APA; they are enshrined in the Michigan and U.S. Constitutions. "[P]rocedural due process requires that a party be provided notice of the nature of the proceedings and an opportunity to be heard by an impartial decision maker at a meaningful time and in a meaningful manner." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, No. 349405, 2020 WL 6811692, at *7 (Mich Ct App, Nov 19, 2020) (citations omitted); see also *Mathews v Eldridge*, 424 US 319, 332 (1976). "The Supreme Court has held that at all times, even when the country is at war, essential liberties remain in effect." *Friends of Devito v Wolf*, 227 A3d 872, 898 (Pa 2020) (citing *Bell v Burson*, 402 US 535, 542 (1971)). Thus, "procedural due process is required even in times of emergency." *Id.*

Article I, Section 17 of the 1963 Michigan Constitution provides that no person shall be "deprived of life, liberty or property, without due process of law." 1963 Const, Art I, § 17.  The Fourteenth Amended to the United States Constitution similarly provides in Section 1 that no state shall "deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV, § 1. The due process guarantees of the Michigan Constitution are coextensive with its federal counterpart. *Mays v Snyder*, 323 Mich App 1, 58; 916 NW2d 227 (2018).

The fundamental tenets of the procedural protections afforded by the Michigan and United States Constitutions are notice and an opportunity to be heard before an impartial

Document received by the MI Court of Claims.

decision maker at a meaningful time and in a meaningful manner. *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005).

Plaintiffs have been denied every procedural protection afforded by the due process clauses of the Michigan and United States Constitutions.   Through Defendants' unilateral actions, Plaintiffs were not afforded an opportunity to be heard to challenge the appropriateness of the MRA's recall of its tested marijuana products. This is especially true for Viridis Bay City. As explained above, Viridis Bay City's tested cannabis products were not tested by other facilities, which means its products were recalled based solely on the purported lack of incubator logs, an action the MRA, itself, acknowledged was insufficient for the recall.

6.   *The Defendants' recall violates substantive due process.*

The due process clause of the Michigan and United States Constitutions also protect a substantive right to due process, in addition to the above described procedural rights. The substantive component "protects against the arbitrary exercise of governmental power." *Bonner v City of Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014).

Here, the MRA has wrongfully treated Plaintiffs as a collective instead of different business entities. Viridis Lansing is a separate and distinct entity with an entirely different ownership structure than Viridis Bay City. Contrary to the MRA's position, none of the audit samples were associated with Viridis Bay City. Each and every one of them were associated with Viridis Lansing. This means that the MRA instituted a recall of cannabis products tested by Viridis Bay City without a failed audit test and based on the absence of incubator logs alone, which the MRA, itself, has acknowledged is insufficient to sustain a recall of this magnitude.

As also explained herein, the MRA has wrongfully and arbitrarily included all cannabis products tested by Plaintiffs as part of its recall, including around 10% of those cannabis products that were not analyzed for aspergillus or other microbials by Plaintiffs. This means that

Document received by the MI Court of Claims.

the MRA has recalled every cannabis product tested within a three-month window, even if it had

no relation to the alleged deficiencies that formed the basis of the recall.   The MRA's arbitrary

exercise of government powers interferes with Plaintiffs' fundamental rights and liberty interests

in violation of both the Michigan and U.S. Constitutions.   U.S. Const. Amend. XIV, § 1, cl. 3;

1963 Const, art 1, § 17.

> **B.     Plaintiffs Will Suffer Irreparable Injury If Injunctive Relief Is Not Granted**

Absent this Court's intercession, Plaintiffs will suffer immeasurable and irreparable

harm.   Michigan courts define irreparable harm as "the kind of injury for which monetary

damages are difficult to calculate." *Certified Restoration Dry Cleaning Network, LLC v Tenke

Corp*, 511 F3d 535, 550 (CA 6, 2007).   A moving party will suffer irreparable harm if, absent an

injunction, it will lose customers, goodwill, or future business.   "The loss of [] goodwill often

amounts to irreparable injury because the damages flowing from such losses are difficult to

compute." *Basicomputer Corp v Scott*, 973 F2d 507, 512 (CA 6, 1992); *see also Mich Bell

Telephone Co v Engler*, 257 F3d 587, 599 (CA 6, 2001) (holding that loss of customer goodwill

"may irreparably harm a company"); *AK Steel Corp v Colton*, No 01-74279, 2001 WL 1636957

(ED Mich, Dec 3, 2001) (finding irreparable harm and granting injunction where movant would

suffer difficult-to-quantify competitive injury and loss of goodwill); *Performance Unlimited, Inc

v Questar Publishers Inc*, 52 F3d 1373, 1382 (CA 6, 1995) (irreparable harm exists where a

Plaintiff's business is threatened with insolvency).

Here, the MRA's overbroad recall will cause Plaintiffs to lose significant revenue,

resulting in severe financial losses and goodwill from current and potential future customers.

(Verified Compl. at ¶¶ 148-149.)   If the overbroad recall is not immediately stayed and

eventually vacated on the merits, Plaintiffs expect to lose customers and may ultimately be

forced to shutter their doors.   (*Id.*)   The fact that the overbroad recall purports to encompass

Document received by the MI Court of Claims.

virtually all products tested by Plaintiffs will significantly interfere with existing customer relationships and will impact future customer relationships. (*Id.* at ¶127.) By implicating an overly broad group of products tested by Viridis Bay City and Viridis Lansing, many existing and potential customers might wrongly reach conclusions about *all* testing done by both Viridis Bay City and Viridis Lansing. The reputational cost to Plaintiffs will be crippling and irreparable. (*Id.* at ¶¶ 148-149.)

Indeed, the MRA's conduct has already significantly disrupted and vitiated Plaintiffs' business. As it currently stands, the MRA's constantly changing positions regarding retesting ad continued testing and insistence on issuing an overbroad and far-reaching recall has pushed Plaintiffs' operations to a standstill. Plaintiffs cannot perform further tests for fear of retaliation or additional sanctions or recalls from the MRA – even though it is performing under the very SOPs that were approved by the MRA. Customers are also being forced to utilize other safety compliance facilities out of the same fears. The inability to continue operations will cause significant financial harm to Plaintiffs.

Likewise, the MRA's unjustified actions have wreaked havoc upon greater than $220 million of commerce within the state of Michigan. As the MRA has recognized, Viridis Lansing and Viridis Bay City run, respectively, the first and third most aspergillus tests in the state of Michigan. Plaintiffs test for between 60 to 70% of the cannabis testing industry, meaning that 60 to 70% of all cannabis products in the *entire state* are subject to the MRA's recall. (*Id.* at ¶ 99.) Plaintiffs and their customers will experience significant revenue, cash flow, reputational, and economic harm as a direct and proximate result of the recall. There is a significant likelihood, if

Document received by the MI Court of Claims.

the recall is allowed to take effect, that Plaintiffs and a sizable number of its customers will have to cease operations. (*Id.* at ¶¶ 148-149.)[4]

Any remedy at law would be futile in this case.  The MRA has acted unilaterally to implement a factually unjustified, overbroad, unscientific, illogical and detrimental recall of all cannabis products tested by Viridis Lansing and Viridis Bay City. Its high ranking officials ignored evidence from a highly respected consultant associated with the AOAC, the organization whose standards are directly incorporated into the MRA's administrative rules for marijuana safety compliance facilities, *see, e.g.*, MAC R.420.705(3), and the manufacturer of Plaintiffs' microbial analysis incubators, indicating that no recall, let alone a recall of this nature, was justified.

In essence, the MRA has based the recall entirely upon the lack of incubator logs which the MRA itself has acknowledged is insufficient to warrant a recall, especially one of this unprecedented magnitude.  Despite Plaintiffs' best efforts, they have thus far failed to convince or compel the MRA to follow its own procedures. The MRA controls those remedies entirely. Even if Plaintiffs were made whole for the loss of their business, Defendants would not be able to compensate Plaintiffs for the loss of goodwill and unseen monetary damage from loss of customers, both current and future, if the overbroad recall is enforced as written.

### C.      The Harm to Plaintiffs Outweighs Any Harm to Defendants

On the other side of the ledger, Defendants will suffer negligible (if any) injury if the Court issues an injunction.   In ruling on an injunction, this Court must assess the harm to

---

4 *See also* Steve Neavling, *Thousands of pounds of marijuana forced off shelves in Michigan's largest cannabis recall* (November 18, 2021), https://www.metrotimes.com/detroit/thousands-of-pounds-of-marijuana-forced-off-shelves-in-michigans-largest-cannabis-recall/Content?oid=28545654

Document received by the MI Court of Claims.

Plaintiffs compared to the possible harm to Defendants, should an injunction be granted. See *Mich State AFL-CIO v Secretary of State*, 230 Mich App 1, 24; 583 NW2d 701, 711 (1998). "The general rule is that whenever courts have found a mandatory injunction essential to the preservation of the *status quo* and a serious inconvenience and loss would result to plaintiff and there would be no great loss to defendant, they will grant it." *L & L Concession Co v Goldhar-Zimner Theatre Enterprises*, 332 Mich 382, 388; 51 NW2d 918 (1952) (emphasis in original); see also *Niedzialek*, 331 Mich 296 at 300 ("It is the settled policy of this Court under such circumstances to grant to a litigant who is threatened with irreparable injury temporary injunctive relief and thereby preserve the original status quo."). The "issuance of a preliminary injunction is appropriate to prevent irreparable harm given the comparatively minimal harm will accrue to the government." *Ave Maria Found v Sebelius*, 991 F Supp 2d 957, 968 (ED Mich 2014); see also *Monaghan v Sebelius*, 931 F Supp 2d 794, 809 (ED Mich 2013) ("The Government will suffer some, but comparatively minimal harm if the injunction is granted.").

Here, as described above, Plaintiffs face substantial and irreparable harm if the overbroad recall continues. On the other hand, Defendants would suffer a minimal amount of harm (if any) should the injunction be granted. Courts have consistently held that government agencies suffer minimal harm when forced to adhere to existing laws. See *Michigan Chamber of Commerce v Land*, 725 F Supp 2d 665, 698 (WD Mich 2010) ("As for the third factor [harm to opposing party due to granting of injunction], neither the Secretary of State's office nor the State of Michigan will suffer any harm by merely being required to obey the Constitution as interpreted by the Supreme Court.").

An injunction would not prevent Defendants from following appropriate procedural steps to suspend or restrict Plaintiffs' licenses. By granting Plaintiffs' Motion, the Court would only

Document received by the MI Court of Claims.

prevent Defendants from enforcing an overbroad recall that is not supported by the facts and that the MRA lacks authority to issue in the first instance. An injunction would therefore not harm Defendants at all. See *Planned Parenthood Ass'n of Cincinnati, Inc v City of Cincinnati*, 822 F2d 1390, 1400 (CA 6, 1987) (holding that there was no substantial harm in preventing city from enforcing ordinance that was likely to be found unconstitutional, as the state has no valid interest in enforcing an unconstitutional ordinance).

Moreover, to the extent Defendants try to argue otherwise, the overbroad recall as written has nothing to do with public health and safety. As described above, the only possible basis for the recall of Viridis Bay City products is the lack of log books. But the MRA knew and approved of Viridis Bay City's SOPs, which never included keeping the logs that the MRA is now attempting to impose on Plaintiffs. Defendants cannot possibly argue that the public is harmed by a practice that it has endorsed and affirmatively stated is not an independent basis for a recall. Likewise, the MRA cannot reasonably assert that there are any public safety concerns to justify recalling materials that Plaintiffs tested for other things that have nothing to do with the alleged issues regarding aspergillus or other microbials.

And in any event, the MRA sat on information about allegedly flawed tests for three weeks and did nothing, which again shows that the recall has nothing to do with pressing issues related to public health and safety. Simply put, there is no scientific or factual basis for the MRA to institute the recall. Indeed, to the best of Plaintiffs' knowledge, the MRA has received *no* complaints from consumers of any adverse effects or experiences with any cannabis product tested by either Viridis Bay City or Viridis Lansing.

Because the harm to Plaintiffs significantly outweighs the harm to Defendants, the Court should accordingly grant Plaintiffs' Motion.

Document received by the MI Court of Claims.

### D.    The Public Interest Is Served by Granting Injunctive Relief

The benefit to the public will be served by enjoining the overbroad recall from remaining in effect as written. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" when deciding whether to issue an injunction. *Winter v Natural Res Defense Council, Inc*, 555 US 7, 25 (2008) (citations omitted). There must be a balance between regulatory efficiency and the procedural safeguards created to protect representative government, ensure well-reasoned decision-making, and promote agency transparency. See, e.g. *N Mariana Islands v United States,* 686 F Supp 2d 7, 21 (D DC 2009) ("there is a general public interest in open and accountable agency decision-making.").

The overbroad recall is already having far-reaching effects. It has been reported that some dispensaries in Michigan may be forced to close.[5] Likewise, the recall could increase the cost of cannabis products because of a supply shortage.[6] This is all happening at the start of a busy holiday season that could be critical to the success of small businesses across Michigan.[7] It is in the public's interest to narrow the recall as described in this Motion to immediately lessen the financial impact of unlawful recall.

### CONCLUSION

WHEREFORE, Plaintiffs request that, pending a hearing on Plaintiffs' request for a preliminary injunction, the Court enter a temporary restraining order enjoining Defendants from

---

[5] Steve Neavling, *Thousands of pounds of marijuana forced off shelves in Michigan's largest cannabis recall* (November 18, 2021), https://www.metrotimes.com/detroit/thousands-of-pounds-of-marijuana-forced-off-shelves-in-michigans-largest-cannabis-recall/Content?oid=28545654

[6] *Id.*

[7] Lindsay Bartlett, *Cannabis Sales in the U.S. Soar on "Green Wednesday"* (November 30, 2020), https://www.forbes.com/sites/lindseybartlett/2020/11/30/cannabis-sales-in-the-us-soar-on-green-wednesday/?sh=1126f3a2625d

Document received by the MI Court of Claims.

enforcing the November 17, 2021, recall bulletin.  Alternatively, Plaintiffs respectfully request that the Court, at a minimum, temporarily enjoin defendants from enforcing the recall as to: (1) products tested by Viridis Bay City; and (2) products that were tested for items other than aspergillus or other microbials.  Plaintiffs further request that the Court immediately allow Viridis Lansing and Viridis Bay City to resume testing for microbials while the Temporary Restraining Order is in place.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Counsel for Plaintiffs

Dated: November 23, 2021              By:      s/ David R. Russell
                                                David R. Russell (P68568)
                                                Brandon M. H. Schumacher (P82930)

HONIGMAN, LLP
Co-Counsel for Plaintiffs

By:      s/ Kevin M. Blair w/permission
         Kevin M. Blair (P76927)

36273:00001:5956152-1

Document received by the MI Court of Claims.

# EXHIBIT A

Document received by the MI Court of Claims.

## Blair, Kevin M.

| | |
|---|---|
| **From:** | Blair, Kevin M. |
| **Sent:** | Thursday, November 18, 2021 1:24 PM |
| **To:** | Patterson, Claire (LARA); Kluytman, Julie (LARA); Mitchell, Desmond (LARA); MRA-scf; Hunt-Scully, Risa (AG) |
| **Cc:** | Todd Welch; Gregoire Michaud; Michele Glinn; Russell, David; Michael LaFramboise |
| **Subject:** | RE: Tomorrow |

It has been over an hour since my email below.  This is getting worse by the minute.  Please advise when I can expect a response.

**From:** Blair, Kevin M. <KBlair@honigman.com>
**Sent:** Thursday, November 18, 2021 12:20 PM
**To:** Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>; Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; MRA-scf <MRA-scf@michigan.gov>; Hunt-Scully, Risa (AG) <HuntScullyR@michigan.gov>
**Cc:** Todd Welch <twelch@viridisgrp.com>; Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>; Russell, David <DRussell@fosterswift.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
**Subject:** RE: Tomorrow

Adding Risa and reiterating my request that we get on the phone asap as things are getting worse by the minute.

You are effectively shutting down Viridis without following the summary suspension procedures.  We suspect that is all deliberate to avoid any oversight.  If this is a health and safety issue, you know there are processes to follow.

**From:** Blair, Kevin M.
**Sent:** Thursday, November 18, 2021 12:13 PM
**To:** 'Patterson, Claire (LARA)' <PattersonC8@michigan.gov>; Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>; Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; MRA-scf <MRA-scf@michigan.gov>
**Cc:** Todd Welch <twelch@viridisgrp.com>; Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>; Russell, David <DRussell@fosterswift.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
**Subject:** RE: Tomorrow

There are factual errors (not anything subject to a difference of opinion) in the audit results that we haven't had a chance to discuss yet.  You said we'll discuss that on Monday.  If you're imposing holds now, we need to get on the phone now to discuss those.  When was Viridis ever told they couldn't do other tests?

**From:** Patterson, Claire (LARA) <PattersonC8@michigan.gov>
**Sent:** Thursday, November 18, 2021 12:06 PM
**To:** Blair, Kevin M. <KBlair@honigman.com>; Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>; Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; MRA-scf <MRA-scf@michigan.gov>
**Cc:** Todd Welch <twelch@viridisgrp.com>; Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>; Russell, David <DRussell@fosterswift.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
**Subject:** RE: Tomorrow

Document received by the MI Court of Claims.

1

**[EXTERNAL EMAIL]**

The attached approval refers to Aspergillus testing only.

*Claire Patterson*

Manager, Scientific & Legal Section
Enforcement Division
Marijuana Regulatory Agency

(517) 230-2097
PattersonC8@michigan.gov
www.michigan.gov/MRA



CONFIDENTIALITY NOTICE: The information contained in this email message, including any attachments, from the Michigan Department of Licensing and Regulatory Affairs is intended solely for the use of the above named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy any and all of the original message.

**From:** Blair, Kevin M. <KBlair@honigman.com>
**Sent:** Thursday, November 18, 2021 12:04 PM
**To:** Kluytman, Julie (LARA) <KluytmanJ@michigan.gov>; Mitchell, Desmond (LARA) <MitchellD6@michigan.gov>; MRA-scf <MRA-scf@michigan.gov>; Patterson, Claire (LARA) <PattersonC8@michigan.gov>
**Cc:** Todd Welch <twelch@viridisgrp.com>; Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>; Russell, David <DRussell@fosterswift.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
**Subject:** FW: Tomorrow

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

Following up on my last email, see highlighted language below as one example when Viridis was explicitly told they could resume testing. Viridis communicated that to customers based on the MRA's assurances and now it seems the MRA is contradicting what you said yesterday. Again, we need to get on the phone ASAP please.

Kevin M. Blair

**HONIGMAN LLP**
O 517.377.0716

Document received by the MI Court of Claims.

kblair@honigman.com

**From:** MRA-scf <MRA-scf@michigan.gov>
**Sent:** Tuesday, November 16, 2021 5:51 PM
**To:** Gregoire Michaud <gmichaud@viridisgrp.com>; Michele Glinn <mglinn@viridisgrp.com>
**Cc:** Blair, Kevin M. <KBlair@honigman.com>; Todd Welch <twelch@viridisgrp.com>; drussell@fosterswift.com; Michael LaFramboise <mlaframboise@viridisgrp.com>; Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Rosenzweig, Noah (LARA) <RosenzweigN@michigan.gov>
**Subject:** RE: Tomorrow

[EXTERNAL EMAIL]

Greg,

Thank you and Michele for promptly sharing the incubator log for Viridis. As discussed earlier, Viridis is approved to move forward using the updated LOM-7.20 Gene-Up Aspergillus. A current method approval form for Viridis is attached. We will also cease placing Viridis Aspergillus tests on administrative hold. If outstanding questions remain, please let me know.

*Patrice R. Fields, Ph.D.*
Laboratory Scientist Specialist
Scientific & Legal Section, Enforcement Division
Marijuana Regulatory Agency
517-281-3640
FieldsP2@michigan.gov
www.michigan.gov/MRA



Save Michigan Lives.

CONFIDENTIALITY NOTICE: The information contained in this email message, including any attachments, from the Michigan Department of Licensing and Regulatory Affairs is intended solely for the use of the above named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy any and all of the original message.

**From:** Gregoire Michaud <gmichaud@viridisgrp.com>
**Sent:** Tuesday, November 16, 2021 4:12 PM
**To:** MRA-scf <MRA-scf@michigan.gov>
**Cc:** KBlair@honigman.com; Todd Welch <twelch@viridisgrp.com>; drussell@fosterswift.com; Michele Glinn <mglinn@viridisgrp.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>; Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Rosenzweig, Noah (LARA) <RosenzweigN@michigan.gov>
**Subject:** RE: Tomorrow

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

See attached...thanks Patrice.

Document received by the MI Court of Claims.

3

**From:** MRA-scf <MRA-scf@michigan.gov>
**Sent:** Tuesday, November 16, 2021 3:30 PM
**To:** Gregoire Michaud <gmichaud@viridisgrp.com>
**Cc:** KBlair@honigman.com; Todd Welch <twelch@viridisgrp.com>; drussell@fosterswift.com; Michele Glinn <mglinn@viridisgrp.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>; Patterson, Claire (LARA) <PattersonC8@michigan.gov>; Rosenzweig, Noah (LARA) <RosenzweigN@michigan.gov>
**Subject:** RE: Tomorrow

Hi Greg,

　　　　Thank you for sharing these documents with us. After reviewing the incubator log, corrective action report, and the updated LOM-7.20 Gene-Up Aspergillus, Viridis North is approved to move forward using the SOP approved as of today to test for Aspergillus. We will also cease placing Viridis North Aspergillus tests on administrative hold. An updated method approval form for Viridis North is attached. While most of the same documentation also applies to Viridis, we are concerned that there is no current incubator log showing into and out of incubator times for Aspergillus test samples at that location. Due to this lack of records, we are withholding approval of the updated LOM-7.20 Gene-Up Aspergillus for Viridis and we will continue placing Viridis Aspergillus tests on administrative hold. The administrative holds for Viridis Aspergillus tests will cease once we have received records confirming that the approved SOP is being followed. If you have questions or concerns, please let me know.

*Patrice R. Fields, Ph.D.*
Laboratory Scientist Specialist
Scientific & Legal Section, Enforcement Division
Marijuana Regulatory Agency
517-281-3640
FieldsP2@michigan.gov
www.michigan.gov/MRA

 

Save Michigan Lives.

CONFIDENTIALITY NOTICE: The information contained in this email message, including any attachments, from the Michigan Department of Licensing and Regulatory Affairs is intended solely for the use of the above named recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution of any confidential and/or privileged information contained in this email is expressly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy any and all of the original message.

**From:** Gregoire Michaud <gmichaud@viridisgrp.com>
**Sent:** Monday, November 15, 2021 11:03 PM
**To:** Patterson, Claire (LARA) <PattersonC8@michigan.gov>
**Cc:** Blair, Kevin M. <KBlair@honigman.com>; Todd Welch <twelch@viridisgrp.com>; drussell@fosterswift.com; Michele Glinn <mglinn@viridisgrp.com>; Michael LaFramboise <mlaframboise@viridisgrp.com>
**Subject:** RE: Tomorrow

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Document received by the MI Court of Claims.

Good evening Claire,

A little miscommunication at our end on who was going to get you these, sorry. Please find attached our corrective action and the two new logs that were put in place as a result of your audit. Bay City implemented the use of the incubator start/end times last Monday with Lansing starting today. Dr. Glinn was out of the lab all last week and the directive to start using it last Monday did not get relayed.  We'll monitor it till the end of the month to ensure compliance is consistent at which point we will close out the corrective action. Also attached is our proposed revisions to the SOP that now reflect the use of the log (revisions highlighted in yellow).

Our apologies again for not getting these to you sooner.

Kind regards,
Greg


From: Michele Glinn <mglinn@viridisgrp.com>
Sent: Monday, November 15, 2021 10:10 PM
To: drussell@fosterswift.com; Gregoire Michaud <gmichaud@viridisgrp.com>
Cc: Blair, Kevin M. <KBlair@honigman.com>; Todd Welch <twelch@viridisgrp.com>
Subject: Re: Tomorrow

Greg, did you send Claire the documents we discussed this afternoon? Didn't see the email.


This e-mail may contain confidential or privileged information.  If you are not the intended recipient, please delete it and notify the sender of the error.

Document received by the MI Court of Claims.